UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**OPINION AND ORDER**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　24 CR 275 (VB)
MANUEL ZUMBA MEJIA,　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendant.　　　　　　　　　:
--------------------------------------------------------------x

Briccetti, J:

　　Defendant Manuel Zumba Mejia is charged in a one-count felony information with illegally re-entering the United States after having been removed following his conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2).  (Doc. #30).

　　Now before the Court is defendant's motion to dismiss the information pursuant to Rule 12 of the Federal Rules of Criminal Procedure.  (Doc. #35).  Defendant argues dismissal is appropriate for three reasons:  (i) the immigration judge who issued the deportation order underlying this prosecution lacked jurisdiction to do so; (ii) the entry of the deportation order was unlawful and fundamentally unfair because defendant's removal proceedings did not comport with due process; and (iii) the illegal reentry statute under which defendant is charged violates the Fifth Amendment's Equal Protection Clause.

　　For the reasons set forth below, the motion is GRANTED and this case is dismissed.

## BACKGROUND

I.　Initial Entry to the United States

　　Defendant is a native and citizen of Ecuador.  In or around 1999, when defendant was in his early twenties, he came to the United States at the invitation of his uncle in search of work opportunities.  He entered the country without papers and settled in Ossining, New York, where his wife joined him several years later after leaving their two children in the care of a relative in

Ecuador. Defendant worked in construction and landscaping, his wife worked as a nanny, and they both worked cleaning offices in the evenings. At some point, defendant's wife's employer agreed to sponsor her for a green card. In December 2008, the couple had a third child.

II.     Defendant's Prior Conviction

In 2009, defendant and his wife brought their infant daughter to a hospital emergency room with injuries. Defendant voluntarily spoke to the police and told them he had shaken the infant up and down while playing with her. Defendant was arrested and later pleaded guilty to reckless assault of a child in violation of New York Penal Law § 120.02, a class D felony. On April 6, 2010, he was sentenced to three years' imprisonment and three years' post-release supervision.

III.    Immigration Proceedings

Following his arrest in 2009, defendant was interviewed by Immigration and Customs Enforcement ("ICE") agents while in custody at the Westchester County Jail and was identified as a deportable noncitizen. ICE lodged a detainer with New York State authorities indicating its intention to take defendant into custody if and when he was released.

On June 28, 2010, ICE issued a Notice to Appear (the "NTA") alleging that defendant was subject to removal because he was a noncitizen who had entered the country without being admitted or paroled by an immigration officer and who had been convicted of reckless assault of a child. The NTA did not state the address of the immigration court or the time and place of the removal proceedings. The NTA was mailed to defendant on July 28, 2010.

Also on July 28, 2010, the immigration court at Downstate Correctional Facility in Fishkill, New York ("Downstate"), issued a notice of hearing to be held before an immigration judge (the "IJ") on September 7, 2010. The notice indicated the hearing would take place at

Downstate, although defendant—who was incarcerated at Bare Hill Correctional Facility in Malone, New York ("Bare Hill"), at the time—would attend by video conference. The notice of hearing indicates it was served on defendant by personal service "c/o Custodial Officer" on the same date on which it was issued. (Doc. #35-4 at ECF 3).[1] However, defendant claims he did not receive this (or any prior) notice of his removal proceeding.

On September 7, 2010, defendant and other Bare Hill inmates were brought to a room with a video link to the Downstate immigration court. The IJ conducted the proceedings with the assistance of a Spanish language interpreter. The IJ began by asking defendant whether he had received the NTA, which he answered in the affirmative. The IJ explained that, pursuant to the NTA, defendant had been charged as removable because of his unlawful presence in the United States and his prior conviction for reckless assault. The IJ reviewed defendant's rights, including the right to an attorney at his own expense, the right to present evidence, and the right to appeal the IJ's decision.

The IJ asked defendant if he wanted more time to find an attorney. Defendant replied, "No, what I would like is if I could be deported, or if you could give me voluntary departure." (Doc. #35-4 at ECF 5 ("Ex. G") at 3:32).[2] The IJ responded, "You're not eligible for voluntary departure because of your crime and because you are in prison. You can't actually leave whenever you would want. If you want, however, I can order you deported." (Id. at 3:49). Defendant stated, "That is what I want, to be deported back to my country." (Id. at 4:10).

---

[1] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

[2] Citations to Ex. G, an audio recording of defendant's removal proceeding, are to the approximate minute and second of the elapsed recording.

The IJ then swore in defendant and asked him several questions, including whether he wished to be deported to Ecuador; whether he had illegally entered the United States; and whether he had appealed his reckless assault conviction. The IJ also asked about defendant's family, including his wife's immigration status and whether he had any children older than 21.

In remarks that were not translated into Spanish, the IJ found the removal allegations established by clear and convincing evidence and ordered defendant's removal to Ecuador. The IJ informed defendant, in translated remarks, that he had ordered his deportation "as requested" and asked whether defendant accepted that decision or wished to appeal it. (Ex. G at 7:43). Defendant responded that he accepted the decision and waived his right to appeal. At the end of the hearing, defendant asked whether he would be required to appear at any further court proceedings, to which the IJ responded, "this is it." (Id. at 8:26).

The hearing lasted approximately eight minutes. At no point did the immigration judge find defendant had been convicted of an "aggravated felony" or explain why defendant's prior conviction rendered him removable.

Defendant served his state sentence and was released on or about September 8, 2011. On September 23, 2011, defendant was removed from the United States to Ecuador.

IV.     Reentry to the United States

Following his removal, defendant re-entered the United States on an unknown date. On October 2, 2021, he was arrested in Croton-on-Hudson, New York, and charged with driving while intoxicated. On December 15, 2022, defendant was charged in this Court with illegal reentry into the United States after having been removed subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b)(2). (Doc. #2).

4

**DISCUSSION**

I.     Standard of Review

Under Rule 12(b), a defendant may raise before trial "any defense, objection, or request that the court can determine without a trial on the merits," including a defect in the information. See United States v. Aiyer, 33 F.4th 97, 116 (2d Cir. 2022).[3]

On a Rule 12(b) motion, the Court may "make factual determinations in matters that do not implicate the general issue of a defendant's guilt." United States v. Sampson, 898 F.3d 270, 281 (2d Cir. 2018). However, the Court may not resolve any "factual dispute that is inextricably intertwined with defendant's culpability." Id.

II.    Lack of Removal Jurisdiction

Defendant argues the immigration judge who ordered his deportation lacked jurisdiction to do so because of defects in the NTA, and therefore the order cannot form the basis for an illegal reentry charge.

The Court disagrees.

To initiate a noncitizen's removal under the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (the "INA"), the government must issue an NTA notifying the noncitizen of the removal proceedings. 8 U.S.C. § 1229(a)(1). The NTA must include, among other requirements, "[t]he time and place at which the proceedings will be held." § 1229(a)(1)(G)(i). Pursuant to agency regulations, the NTA must also specify the "address of the Immigration Court" with jurisdiction over the proceeding. 8 C.F.R. § 1003.15(b)(6). Recently, the Second Circuit held such regulations are "claims-processing" rules that are non-jurisdictional and curable. United

---

[3]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

States v. Suquilanda, 116 F.4th 129, 137–38 (2d Cir. 2024).  While agency regulations can "operationalize the mandates of the INA," such regulations "cannot define the subject-matter jurisdiction of Immigration Courts."  Id. at 137.

Here, defendant's initial NTA, dated June 28, 2010, omitted details about the time and place of his removal proceedings and the address of the immigration court with jurisdiction over his removal.  (Doc. #35-3 at ECF 22–23).  These details were later provided in the notice of hearing, dated July 28, 2010.  (Doc. #35-4 at ECF 3).

First, defendant argues the omission of the immigration court address is a defect of jurisdictional significance.  Agency regulations require the NTA to include the "address of the Immigration Court where the [Immigration and Naturalization] Service will file" the NTA.  8 C.F.R. § 1003.15(b)(6).  However, as defendant acknowledges, this argument is foreclosed by United States v. Suquilanda, 116 F.4th at 137–38.

Second, defendant argues the omission of hearing time and place information from the June 28 NTA divests the IJ of jurisdiction because defendant was never supplied later notice of this information.  The government argues this defect was cured in the July 28 notice of hearing, without addressing defendant's contention that he did not in fact receive that notice.

In Banegas Gomez v. Barr, 922 F.3d 101 (2d Cir. 2019), the Second Circuit held an IJ retains jurisdiction even if the NTA lacks hearing information so long as that information is supplied in a separate notice.  Id. at 111–12.  The Second Circuit has not considered whether an IJ is deprived of jurisdiction if that information is never actually supplied to a defendant.

The Second Circuit applies "a clear statement rule" to determine whether a statutory requirement is jurisdictional.  United States v. Suquilanda, 116 F.4th at 137.  "This simply means that Congress must clearly state that a limitation on a statute's scope is jurisdictional, and that in

6

the absence of such a clear statement, courts should treat the restriction as nonjurisdictional in character." Id. The INA requires that an NTA contain "a variety of pieces of information, such as the 'nature of the proceedings,' 'conduct alleged to be in violation of the law,' and that the 'alien may be represented by counsel.' It also requires that such NTAs provide 'the time and place at which the proceedings will be held.'" Banegas Gomez v. Barr, 922 F.3d at 110 (quoting 8 U.S.C. § 1229(a)(1)). The "statutory text [of the INA] does not, however, explain when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several requirements for NTAs listed in § 1229(a)(1) are jurisdictional." Id.

Because the statutory text of the INA does not suggest the hearing time and place information is jurisdictional, applying the clear statement rule, the Court finds the omission of this information from the NTA did not divest the IJ of jurisdiction even if it was not later cured.

III.   Validity of Deportation Order Under Section 1326(d)

Defendant next argues his underlying deportation order is invalid and cannot form the basis for an illegal reentry charge because he has satisfied the requirements of 8 U.S.C. § 1326(d). In particular, defendant argues his deportation order was fundamentally unfair because the IJ erroneously informed him he was ineligible for voluntary departure.

The Court agrees.

A.   Legal Standard

1.   Collateral Attack on a Prior Deportation Order

An element of the offense of illegal reentry is the defendant's prior removal or deportation. See United States v. Paredes-Batista, 140 F.3d 367, 376 (2d Cir. 1998). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), the Supreme Court observed that when an administrative proceeding "play[s] a critical role in the subsequent imposition of a criminal

7

sanction, there must be some meaningful review of the administrative proceeding." Id. at 838–39.  In other words, under Mendoza-Lopez, a deportation order issued in the absence of the appropriate due process protections cannot form the basis of a subsequent illegal reentry prosecution.  See id. at 842.  Congress later codified the holding of Mendoza-Lopez at 8 U.S.C. § 1326(d), which created a statutory mechanism for collaterally challenging the validity of an underlying removal order.  See United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004).

To mount a successful challenge to the validity of an underlying removal order, the noncitizen must demonstrate:  (i) he "exhausted any administrative remedies that may have been available to seek relief against the order," (ii) the prior deportation proceedings "improperly deprived" him of "the opportunity for judicial review," and (iii) "the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d)(1)–(3); United States v. Copeland, 376 F.3d 61, 65–66 (2d Cir. 2004).  All three statutory requirements are mandatory.  United States v. Palomar-Santiago, 593 U.S. 321, 326 (2021).

To demonstrate fundamental unfairness under Section 1326(d)(3), a noncitizen "must show both a fundamental procedural error and prejudice resulting from that error."  United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002).  The standard for prejudice is whether "there is a reasonable probability that, but for the error, the result of the proceeding would have been different."  United States v. Daley, 702 F.3d 96, 100 (2d Cir. 2012).

        2.    Voluntary Departure

Voluntary departure is a form of relief that enables individuals "identified by the government as being illegally present in the United States to leave the country of their own accord without being forcibly removed by the government."  Thapa v. Gonzalez, 460 F.3d 323, 327 (2d Cir. 2006).  An eligible noncitizen may seek voluntary departure in lieu of or prior to the

8

conclusion of removal proceedings, 8 U.S.C. § 1229c(a), or after the conclusion of removal proceedings, id. § 1229c(b). Because a prior deportation order is an element of the crime, a noncitizen who was granted voluntary departure cannot be prosecuted for the crime of illegal reentry. Id. § 1326(a)(1).

Although the grant of voluntary departure is discretionary, the erroneous deprivation of the right of an eligible individual to apply for discretionary relief constitutes a fundamental procedural error. See, e.g., United States v. Calderon, 391 F.3d 370, 376 (2d Cir. 2004). This is because "the right to be informed of the possibility of voluntary departure relief, although the relief itself is not constitutionally mandated, . . . is an established right" that is conferred by statute and implemented by federal regulations. United States v. Gonzalez, 2015 WL 3443942, at *7 (S.D.N.Y. May 29, 2015).

To be eligible for voluntary departure, noncitizens must not have been convicted of an "aggravated felony." 8 U.S.C. § 1229c(a)(1). The INA defines "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16, in turn, defines "a crime of violence" as "an offense that has an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). "The use of physical force refers to intentional—rather than accidental—force and suggests a category of violent, active crimes." Ojo v. Garland, 994 F.3d 109, 111 (2d Cir. 2011).

B.     Analysis

In this case, because defendant's ability to challenge his underlying removal order turns largely on whether the removal order was fundamentally unfair, the Court begins its analysis there. 8 U.S.C. § 1326(d)(3). Moreover, the first two requirements of Section 1326(d) are often

9

informed by an analysis of the third. See United States v. Guzman, 2022 WL 17068800, at *3 (S.D.N.Y. Nov. 17, 2022).

        1.        Fundamental Unfairness

Defendant argues his deportation order was fundamentally unfair because his underlying conviction did not render him ineligible for voluntary departure under the INA. He contends the IJ's actions in informing him that he was ineligible for voluntary departure constituted fundamental procedural error and was prejudicial.

The Court agrees.

        a.        Eligibility for Voluntary Departure

As a threshold matter, the Court must consider whether defendant was eligible for voluntary departure under the INA. This question turns on whether reckless assault of a child constitutes a crime of violence, and thus an aggravated felony, under the INA. "To make a crime of violence determination, courts use the categorical approach, which ignores the circumstances of the particular defendant's crime and instead considers the minimal criminal conduct necessary to sustain a conviction under the relevant statute." Singh v. Barr, 939 F.3d 457, 462 (2d Cir. 2019).

The definition of an "aggravated felony" under the INA is "relevantly identical" to the definition of a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e)(2)(B)(i). Borden v. United States, 593 U.S. 420, 427 (2021). Both provisions require "the use, attempted use, or threatened use of physical force against the person of another." See id. In Borden, the Supreme Court held the definition of a "violent felony" under ACCA did not include offenses that criminalize reckless conduct. Id. at 429. The Court reasoned that reckless conduct is "far removed from the deliberate kind of behavior" that ACCA sought to criminalize.

Id. at 439.  The operative phrases, the Court held, were "use of force" and "against another," with the latter phrase "set[ting] out a mens rea requirement—of purposeful or knowing conduct."  Id. at 434.

As its name implies, reckless assault of a child requires a reckless mens rea.  N.Y. Penal Law § 120.02(1).  Applying the Supreme Court's holding in Borden, as well as the Second Circuit's instruction that the "identical language" between the elements clauses in the INA and ACCA "means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute," Singh v. Barr, 939 F.3d at 463, this Court concludes that the reckless conduct criminalized in Section 120.02 does not constitute a crime of violence under the INA because it does not involve purposeful or knowing conduct.  Indeed, the New York state offense at issue is exactly like the numerous state offenses the Supreme Court considered and categorically denied as being predicate "violent felonies" under ACCA.  See United States v. Borden, 593 U.S. at 439–40.

Accordingly, defendant's prior conviction for reckless assault of a child—although his conduct caused serious physical injury to the child—is categorically not an aggravated felony under the INA rendering defendant ineligible for voluntary departure.

      b.   Fundamental Procedural Error

The Court also holds that the IJ's instruction that defendant was ineligible for voluntary departure constitutes a fundamental procedural error within the meaning of Section 1326(d)(3).

An immigration judge's "failure to advise of the right to seek relief through voluntary departure is a fundamental error."  United States v. Brown, 354 F. Supp. 3d 362, 369 (S.D.N.Y. 2018).  This is true even when an immigration court correctly applied guidance from the Board

11

of Immigration Appeals and that guidance was only later overruled by the Supreme Court after the defendant's removal hearing.  United States v. Sosa, 387 F.3d at 138.

Moreover, although an error by a lower court is "generally not deemed fundamental" if an appeal was available but not taken, "a ruling by an IJ that misleads an alien into believing that no relief exists falls into a different category."  United States v. Copeland, 376 F.3d at 71.  This is because an IJ is entrusted with "special duties" with respect to noncitizens, as "our removal system relies on IJs to explain the law accurately to pro se [noncitizens]."  Id.  "Otherwise, such [noncitizens] would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal."  Id.

That is exactly what happened here.  The IJ not only failed to inform defendant, proceeding pro se, that he was eligible for voluntary departure, but explicitly—and incorrectly—told defendant he was ineligible for such relief "because of his crime."  (Ex. G at 3:49). Defendant thus was not properly advised of his right to seek relief through voluntary departure. Moreover, defendant's waiver of his right to appeal does not negate this fundamental error because the IJ's instruction misled defendant into believing no such relief was available.

Accordingly, the Court concludes the IJ's failure to inform defendant of his right to seek voluntary departure constituted fundamental procedural error.

c. Prejudice

Finally, the Court finds this fundamental procedural error prejudiced defendant.

"Prejudice is shown where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred."  United States v. Copeland, 376 F.3d at 73.  Defendant's burden is not to affirmatively show he would have been granted voluntary departure.  United States v. Brown, 354 F. Supp. 3d at 373.  Rather, a defendant must

"demonstrate both a reasonable probability that [i] he would have sought voluntary departure and [ii] that such relief would have been granted." United States v. Gonzalez, 2015 WL 3443942, at *11 (S.D.N.Y. May 29, 2015). "The reasonable probability standard is considerably lower, and considers whether the showing is sufficient to undermine confidence in the outcome." United States v. Gutierrez-Campos, 2022 WL 281582, at *17 (S.D.N.Y. Jan. 31, 2022), vacated and remanded on other grounds, 2024 WL 3856920 (2d Cir. Aug. 16, 2024). Indeed, reasonable probability is often quantified as a "twenty percent probability that relief would have been granted absent the error." United States v. Brown, 354 F. Supp. 3d at 371.

To be eligible for voluntary departure before or during a removal hearing, a noncitizen must concede removability, withdraw any prior requests for relief, and waive appeal. 8 C.F.R. § 1240.26(b)(1)(i). A noncitizen must also have not been convicted of an aggravated felony. Id. An immigration court has broad discretion to grant voluntary departure, and "discretion may be favorably exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties in the United States, or humanitarian needs." In re Arguelles-Campos, 22 I. & N. Dec. 811, 817 (BIA 1999). As courts in this Circuit have recognized, voluntary departure is "highly beneficial to an alien and . . . often conferred when sought." United States v. Garcia, 2008 WL 3890167, at *7 (E.D.N.Y. Aug. 19, 2008).

As discussed above, defendant's conviction was not a disqualifying aggravated felony and, as the record demonstrates, defendant conceded his removability, had made no prior requests for relief, and waived his right to appeal. Moreover, defendant had resided in the United States for more than eleven years at the time of the hearing, had close family ties to the United States (including a child who was a U.S. citizen), and had a spouse who was in the process of obtaining a green card through her employer. In light of these uncontroverted facts, the Court is

persuaded there is a reasonable probability the IJ would have granted defendant's request for voluntary departure, such that defendant was prejudiced by the IJ's fundamental procedural error. The Court thus concludes defendant has demonstrated his removal proceedings were fundamentally unfair under Section 1326(d)(3).

### 2. Exhaustion of Administrative Remedies

Defendant next contends he is excused from the administrative exhaustion requirement under Section 1326(d)(1) because the underlying deportation order violated his due process rights and his appeal waiver was not knowing and voluntary.

The Court agrees.

Pursuant to Section 1326(d)(1), a noncitizen must demonstrate he "exhausted any administrative remedies that may have been available to seek relief against the order." It is undisputed defendant did not exhaust his administrative remedies. However, "the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." United States v. Sosa, 387 F.3d at 136. Indeed, due process guarantees that the administrative exhaustion requirement be excused when a noncitizen's waiver of his right to appeal was not knowing and voluntary. Id. at 137.

#### a. Availability of Remedies

To analyze whether defendant properly exhausted, the Court must first consider whether administrative remedies were available. United States v. Gutierrez-Campos, 2024 WL 3856920, at *2 (2d Cir. Aug. 16, 2024) (summary order). Only if the Court finds remedies were available, but defendant failed to exhaust them, should the Court reach the constitutional question of whether defendant should be excused from his failure to exhaust. Id. In Palomar-Santiago, the Supreme Court held that an "immigration judge's error on the merits does not excuse the

14

noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error." United States v. Palomar-Santiago, 593 U.S. at 328.

Here, administrative remedies were available to defendant and he did not exhaust these remedies. The record demonstrates the IJ informed defendant of his right to appeal and asked defendant several times whether he wished to appeal the order of removal, to which defendant answered "no." (Ex. G at 3:18; 7:43; 7:58). There was no misrepresentation by the IJ as to the availability of an appeal or the rules that govern administrative appeals. Moreover, there was nothing that functionally prevented defendant from pursuing administrative remedies—following his removal hearing, defendant continued to serve his state prison sentence for another year and had sufficient time to file an administrative appeal. Accordingly, the Court finds that administrative remedies were available to defendant.

    b.  Appellate Waiver

Next, the Court considers defendant's argument that because the waiver of his right to an agency appeal was not knowing and voluntary, he should be deemed to have exhausted his administrative remedies under the Second Circuit's precedents in Sosa and Calderon.

"A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) . . . only where an alien's waiver of administrative review was knowing and intelligent." United States v. Sosa, 387 F.3d at 136. In Sosa, the Second Circuit held a pro se defendant's appellate waiver was invalid because the IJ did not inform him of his right to apply for discretionary relief. Id. at 136–37. Similarly, in Calderon, the Circuit concluded that the defendant, despite being represented by counsel, had not made a knowing and intelligent waiver because he was explicitly told by the immigration judge that he was ineligible

15

for discretionary relief even though he was in fact eligible.  United States v. Calderon, 391 F.3d at 375.

The government's principal argument here is that Sosa, Calderon, and related cases in this Circuit have been abrogated by the Supreme Court's recent decision in United States v. Palomar-Santiago.  There, the Supreme Court reaffirmed that the requirements of Section 1326(d) are mandatory and rejected a Ninth Circuit rule that excused a defendant from proving the first two requirements of Section 1326(d) if he were convicted of a crime that was later found not to be a removable offense.  United States v. Palomar-Santiago, 593 U.S. at 326–27.  The Supreme Court held the Ninth Circuit's "extrastatutory" rule was incompatible with the statutory text, which made clear all three requirements are mandatory.  Id. at 326.

The government contends the Second Circuit's holding in Sosa is "essentially the same" as the Ninth Circuit exception that was invalidated in Palomar-Santiago, and that the latter forecloses this Court's review.  (Doc. # 39 ("Gov't Opp.") at 9).  But the Supreme Court expressly declined to reach any constitutional arguments, such as those at issue in Sosa, because "they were not raised below and are outside the scope of the narrow question th[e] Court granted certiorari to decide."  United States v. Palomar-Santiago, 593 U.S. at 329 n.4.  In other words, Sosa and its related cases do not concern the validity of a de facto exception like that at issue in Palomar-Santiago; rather, these cases consider the need, under the Supreme Court's teachings in Mendoza-Lopez, for an exception to the exhaustion requirement if a prior proceeding violated due process guarantees.  See United States v. Sosa, 387 F.3d at 137.  As Palomar-Santiago was a purely statutory decision, the Court elects to follow other courts in this Circuit that have continued to recognize an exception to the exhaustion requirement in the case of an invalid waiver.  See, e.g., United States v. Gutierrez-Campos, 2022 WL 281582, at *17; United States v.

16

Contreras, 2023 WL 3569274, at *11 n.10 (S.D.N.Y. May 17, 2023); United States v. Guzman, 2022 WL 17068800, at *6.

The government also contends there is no evidence defendant's waiver was not knowing and involuntary. The Court disagrees. As an initial matter, the IJ's erroneous instruction that defendant was ineligible for voluntary departure renders his waiver not knowing and intelligent under Sosa. 387 F.3d at 137. Moreover, the circumstances of the hearing suggest defendant did not fully comprehend the nature of the proceedings. Defendant appeared pro se, was detained at the time of the hearing, required a Spanish-language interpreter to understand the proceedings, and was not even aware of the removal hearing until he was brought into the room at Bare Hill where the hearing was being streamed. Although most of the hearing was translated into Spanish, the IJ's findings regarding removability were not. Defendant claims he accepted the IJ's decision because he "thought there was no other option," and that he would have appealed had he known he was eligible for voluntary departure. (Doc. #35-3 at 3). Taken together, these factors demonstrate defendant failed fully to comprehend the nature of the proceedings and was uninformed as to the availability of voluntary departure.

Accordingly, the Court concludes that Section 1326(d)(1)'s administrative exhaustion requirement is excused because defendant's appellate waiver was not knowing and voluntary.

3. Opportunity for Judicial Review

Finally, the Court must consider whether defendant has satisfied Section 1326(d)(2)'s requirement that the removal order deprived him of the opportunity for judicial review.

The Second Circuit has recognized that an invalid waiver of the right to judicial review will often result from "the same lack of understanding" that results in an invalid waiver of the right to administrative review. United States v. Sosa, 387 F.3d at 136. Having found defendant's

17

appellate waiver was not knowing and voluntary, the Court also concludes defendant was denied the opportunity for judicial review.

The government suggests the availability of habeas review can constitute an opportunity for judicial review. (Gov't Opp. at 9). Indeed, the Second Circuit has held habeas review may constitute judicial review for the purpose of Section 1326(d)(2), and an analysis of the availability of such relief may turn on the time interval between the entry of the final deportation order and a defendant's physical deportation. See United States v. Copeland, 376 F.3d at 68. However, defendant is correct that Copeland pre-dates the REAL ID Act of 2005, which transferred jurisdiction over removal habeas corpus petitions to the courts of appeals. 8 U.S.C. § 1252 (d)(1). Such jurisdiction, in turn, requires the exhaustion of administrative remedies, from which this Court has deemed defendant excused. Accordingly, the Court concludes defendant has satisfied Section 1326(d)(2).

IV.   Equal Protection Argument

Having found defendant has satisfied the requirements to attack his underlying removal order, the Court need not reach his argument that Section 1326 is unconstitutional under the Fifth Amendment. In any event, defendant's argument is foreclosed by United States v. Suquilanda, in which the Second Circuit joined six other circuits in concluding that Section 1326 does not violate the Fifth Amendment. 116 F.4th at 144. The court applied the Arlington Heights burden-shifting framework, which requires a plaintiff to demonstrate that "animus against the protected group was a significant factor" in the legislature's decision making. Id. at 139. Although the Circuit observed there was "compelling evidence" of racial animus when the preceding statute was promulgated in 1929, it reasoned that any discriminatory intent that infected the original statute was not "reaffirmed" in the Immigration and Nationality Act of 1952 (the "1952 Act"),

when Congress reenacted Section 1326. Id. at 141–44. Accordingly, defendant's argument that the illegal reentry statute is unconstitutional fails.

## CONCLUSION

The motion to dismiss the information is GRANTED.

The Clerk is instructed to terminate the motion (Doc. # 35) and close this case. All scheduled proceedings in this case are hereby cancelled.

Dated: October 29, 2024
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge